**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

DAVID RUGGIRELLO,

    Plaintiff,

*v*.                                                                  Case No. 07-CV-11020

COMMISSIONER OF                              DISTRICT JUDGE DENISE PAGE HOOD
SOCIAL SECURITY,                              MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.     Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for disability insurance benefits. This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 9, 10.)

Plaintiff was 44 years of age at the time of the administrative hearing. (Tr. at 280.) He has a GED awarded in 2001. (Tr. at 57.) Plaintiff's relevant work history includes maintenance and machine repair in a plastics plant. (Tr. at 53, 286.)

Plaintiff filed the instant claim on July 2, 2004, alleging that he became unable to work on June 1, 2002. (Tr. at 45.) The claim was denied at the initial administrative stages. (Tr. at 36-40.) On June 26, 2006, Plaintiff appeared before Administrative Law Judge ("ALJ") Anthony Roshak who considered the case *de novo*. In a decision dated November 3, 2006, the ALJ found that Plaintiff was not disabled. (Tr. at 14-25.) Plaintiff requested a review of this decision on November 8, 2006. (Tr. at 11-13.)

The ALJ's decision became the final decision of the Commissioner on February 22, 2007, when, after the review of additional exhibits (Tr. at 258-77), the Appeals Council denied Plaintiff's request for review.[1] (Tr. at 5-10.) On March 8, 2007, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

**B.     Standard of Review**

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts

---

[1]While adopting the ALJ's ultimate conclusions, the Appeals Council utilized a different grid rule than that cited by the ALJ. (Tr. at 9.)

relevant to an application for disability benefits. A federal court "may not try the case *de novo*[.]" *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Anderson v.*

*Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

**C. Governing Law**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but

4

cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

A claimant must meet all five parts of the test set forth in 20 C.F.R. § 404.1520 in order to receive disability benefits from Social Security. The test is as follows:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.
>
> Step Three: If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.
>
> Step Four: If the claimant is able to perform his or her previous work, benefits are denied without further analysis.
>
> Step Five: If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 687-88 (6th Cir. 1985). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Preslar*, 14 F.3d at 1110. "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Id.* "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ." *Id.*

### D. Administrative Record

Evidence contained in the administrative record and presented to the ALJ indicates that in late May 1998, Plaintiff underwent spinal fusion surgery at St. John Hospital in Detroit. (Tr. at

133.) Thereafter, he saw Drs. Chiodo and Reddy on a regular basis primarily for treatment of persistent radiating pain into the right leg. (Tr. at 152-257.) In early October 2000, Plaintiff was examined by a Dr. Chiodo, who believed that Plaintiff may have been suffering from scar distortion of the right L5-S1 neural foramina. (Tr. at 172.) Strength in the legs was found to be normal and straight leg tests were negative. (*Id.*) The doctor ordered additional diagnostic studies. (*Id.*) Plaintiff was given an epidural injection and in mid-January 2001 he "noted a significant improvement in his leg pain." (Tr. at 167.) Plaintiff was thereafter prescribed physical therapy, which he reported increased his right leg pain. (Tr. at 164.)

In June 2001, Dr. Chiodo reported that a consulting physician had concluded that Plaintiff was not a candidate for a spinal cord stimulator. (Tr. at 161.) Examination revealed that strength and sensation were intact, although Plaintiff continued to report right leg pain and his hamstring muscles appeared somewhat tight. (*Id.*) The doctor continued Plaintiff's medications. (Tr. at 162.) In mid-September 2001, Plaintiff reported continued pain, although he was able to walk three-quarters to one mile each day, and participate in low-level bicycle activities. (Tr. at 159.)

In early February 2002, the doctor changed Plaintiff's medications and prescribed a repeat epidural injection, which was performed in early March 2002. (Tr. at 157-58.) In August 2002, approximately 3 months after the disability onset date listed in Plaintiff's benefits application, Dr. Chiodo reported that Plaintiff "is now working five hours a day. He is not doing any lifting. He does do a job that requires him to be in a seated or slightly bent position, but he has not had any difficulty thus far with the sec committee. This work activity will continue to advance. His workplace is very actively [seeking] to get him back to work activity rather than to pursue any further vocational rehabilitation at this time." (Tr. at 156.) Plaintiff reported intermittent pain in the right leg without numbness or tingling. (*Id.*) On examination, strength was normal in both legs

6

as were reflexes, sensation, and straight leg-raising tests were normal. (*Id.*) The doctor stated that Plaintiff would "continue with increased activity as tolerated." (*Id.*) Two weeks later, the doctor reported that he saw a CD-ROM video of Plaintiff's work activity. (Tr. at 154.) In spite of the fact that this work was outside the doctor's restrictions, and caused Plaintiff leg pain, according to the doctor, Plaintiff "does feel that he wants to continue to proceed with this activity. He feels that his workplace is really trying to get him back into work. He finds that his supervisor is very understanding[.]. . . The patient notes that his symptoms do increase throughout the week and that by the end of the week he does have pain that persists for a 24-hour period of time radiating into his leg. However, he notes that over the weekend this quiets down quite nicely, only to resume the next week. The patient is satisfied with this and [is] willing to continue to try to work in this regard with the understanding that his workplace has not had other work activity to offer him at this time. Interval medical history was otherwise unremarkable." (*Id.*)

Plaintiff underwent repeat epidural injections in mid-September 2002 (Tr. at 153) and in late October 2002. Dr. Chiodo reported that although Plaintiff continued to have pain in the right leg, it was "significantly improved from previous." (Tr. at 152.) The doctor noted that after lying down, Plaintiff's "symptoms resolved and he can resume regular activities around the household." (*Id.*)

In late February 2003, Plaintiff underwent a cardiac exercise stress test. The reviewing physician found normal heart function and no evidence of myocardial ischemia. (Tr. at 199.) The electrocardiogram testing of Plaintiff's heart was normal. (Tr. at 200.)

In early May 2003, Plaintiff underwent a chest x-ray taken at the request of Dr. Reddy. Plaintiff's heart appeared normal in size, and there was minimal increase in long markings, which the reviewing physician felt could be consistent with possible COPD (chronic obstructive

7

pulmonary disease). (Tr. at 196.) Pulmonary function studies done later the same month were considered within normal limits. (Tr. at 207.)

In early November 2003, Plaintiff underwent x-rays of the spine taken at the request of Dr. Reddy. (Tr. at 187.) The x-rays revealed minimal degenerative narrowing of the disc spaces at the lower and dorsal spine. (*Id.*)

Between February and October 2004, Plaintiff underwent psychological counseling at St. John Hospital. (Tr. at 212-17.) In early November 2004, Plaintiff underwent a psychiatric examination conducted at the request of the Disability Determination Service by a psychologist. Plaintiff reported watching television and surfing the Internet. (Tr. at 220.) Plaintiff reported that he made dinner with his children, loaded the dishwasher, and did light laundry. (*Id.*) The examiners reported that Plaintiff exhibited good contact with reality, good self-esteem and did not appear to either minimize or exaggerate his symptoms. (Tr. at 221.) Plaintiff's stream of mental activity was considered spontaneous, his speech was organized, and he showed no unusual ideation. (*Id.*) Plaintiff denied hallucination, delusions, obsessions or suicidal ideas. (*Id.*) Plaintiff was described as friendly and his affect appropriate. (Tr. at 222.) The examiners made no diagnoses of mental impairments and considered Plaintiff's prognosis to be good. (Tr. at 223.)

In late November 2004, Plaintiff was again seen by Dr. Chiodo. (Tr. at 252.) The doctor reported that a recent myelogram revealed disk bulging on the right side in the L5-S1 level. No evidence of hardware failure was seen at the site of Plaintiff's earlier fusion surgery. Reflexes were symmetrical and strength was considered normal in both legs. (*Id.*) A repeat epidural injection was prescribed, which was performed in mid-December 2004. (Tr. at 250.) Repeat epidural injections were also performed in mid-July 2005, early December 2005 and late May 2006. (Tr. at 229, 236, 242.)

A vocational expert ("VE") testified at the administrative hearing. He characterized Plaintiff's prior work as skilled and heavy in exertion. (Tr. at 293.) In response to a hypothetical question from the ALJ presuming the exertional limitations described by Plaintiff, the VE identified approximately 4,000 sedentary-exertion packaging, sorting, inspection or assembly jobs in the metropolitan Detroit area, which could be done either sitting or standing, and approximately 7,000 such jobs in the state. (Tr. at 293-94.)

### E. ALJ's Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (Tr. at 19.) At step two, the ALJ found that Plaintiff's impairments were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform his previous work. (*Id.*) At step five, using the Medical-Vocational Rules as guides, the ALJ denied benefits, concluding that Plaintiff retained the ability to undertake a limited range of sedentary work. (Tr. at 20-24.)

### F. Review of ALJ's Determination

### 1. Legal Standards

The ALJ found that Plaintiff possessed the residual functional capacity to return to sedentary work. (Tr. at 19-24.) According to the Code of Federal Regulations,

> [s]edentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if

walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). Social Security Ruling ("SSR") 83-10 further clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10, 1983 WL 31251 (S.S.A.).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

On this record, I suggest a substantial evidence supports the findings of the ALJ. There is no meaningful evidence supporting any claims of disabling mental impairment in this record. As to Plaintiff's physical impairments, although subsequent to his spinal fusion surgery Plaintiff clearly suffered from pain and physical limitations, Plaintiff's treating physicians consistently reported that strength, reflexes and sensation in his legs were normal. (Tr. at 156, 161, 172, 252.) In mid-September 2001, Plaintiff reported that he was able to walk three-quarters to one mile per

day and participate in low-level bicycle activities. (Tr. at 159.) Three months after the disability onset date alleged in his application, Plaintiff reported to his treating physician that he was working five hours a day. (Tr. at 156.) That same month, Plaintiff told his treating physician that he wanted to continue working even though after viewing a video of the work, the doctor concluded that the work was outside the physical limitations he had prescribed. (Tr. at 154.) Approximately two months later, Dr. Chiodo reported that the pain in Plaintiff's leg had "significantly improved" after epidural injections. (Tr. at 152.) A cardiac exercise stress test, electrocardiogram, and pulmonary function studies were all normal. (Tr. at 199, 200, 207.) I further suggest that the ALJ's residual function analysis is supported by the opinions of the VE, which in turn were based upon Plaintiff's own testimony at the administrative hearing.

  The ALJ failed to find Plaintiff's complaints of disabling pain fully credible. Social Security regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

In the present case, the ALJ acknowledged that Plaintiff had an impairment that could cause pain; however, he found that the severe and debilitating nature of Plaintiff's alleged pain was not fully credible and provided reasons for this conclusion. The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at **3 (6th Cir. Feb. 11, 1999) (unpublished). Under this standard, I suggest that there is insufficient basis on this record to overturn the ALJ's credibility determination.

As to Plaintiff's claims of disabling mental impairments, the evidence in this case falls considerably short of that deemed sufficient in this circuit to justify a finding of disability. *See Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1068 (6th Cir. 1992); *Lankford v. Sullivan*, 942 F.2d 301 (6th Cir. 1991); *Cornette v. Sec'y of Health & Human Servs.*, 869 F.2d 260 (6th Cir. 1988). In addition, it is the law of this circuit that a claimant must meet all criteria of a listing in order to be deemed disabled on the basis of the medical evidence alone. *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

Accordingly, I suggest that the record contains substantial evidence supporting the ALJ's decision and, therefore, after review of the record, I conclude that the ALJ's decision, which ultimately became the final decision of the Commissioner, is within that "zone of choice within

which decisionmakers may go either way without interference from the courts." *Mullen*, 800 F.2d at 545.

III. **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                              s/ *Charles E Binder*
                                              CHARLES E. BINDER
Dated: November 19, 2007                     United States Magistrate Judge

**CERTIFICATION**

      I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James Brunson, the Commissioner of Social Security, and Kenneth Laritz, and served on U.S. District Judge Hood in the traditional manner.


Date: November 19, 2007                 By     s/Patricia T. Morris
                                                              Law Clerk to Magistrate Judge Binder